

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:10cr248-02

ADLEY HUSNI ABDULWAHAB

## MEMORANDUM OPINION

Before the Court are Defendant's MOTION FOR A JUDGMENT OF ACQUITTAL (Docket Nos. 268 & 312) and MOTION FOR A NEW TRIAL (Docket Nos. 269, 272 & 310). For the reasons that follow, no evidentiary hearing is necessary and the motions will be denied.

### BACKGROUND

On September 7, 2010, Adley H. Abdulwahab ("Abdulwahab" or "Defendant") was charged in an eighteen-count Indictment in the Eastern District of Virginia, Richmond Division. On February 1, 2011, he was charged in an eighteen-count Superseding Indictment in the Eastern District of Virginia, Richmond Division. Three counts were dismissed on the motion of the United States on June 3, 2011. Following a trial that began on June 7, 2011, the jury returned a verdict of guilty as to all remaining counts. Abdulwahab was found guilty as to Count One, which charged the Defendant with Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349; Counts Two, Three, and Five through Seven, which charged the Defendant with Mail Fraud and Aid and Abet, in

violation of 18 U.S.C. §§ 1341 and 2; Count Eight, which charged the Defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h); Counts Nine and Eleven through Fourteen, which charged the Defendant with Money Laundering and Aid and Abet, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2; Counts Fifteen, Seventeen, and Eighteen, which charged the Defendant with Securities Fraud and Aid and Abet, in violation of 15 U.S.C. §§ 77q(a) and 77(x) and 18 U.S.C. § 2. The charges stemmed from the Defendant's involvement in a number of A&O business entities that acquired and marketed life settlements to investors. Approximately 825 investors invested more than $100 million with various A&O business entities. It is projected that the approximately 825 investors will receive less than $5 million, representing a loss amount of more than $95 million.

After the jury returned its verdict, the Defendant filed, by counsel Murray Janus, a Motion for a Judgment of Acquittal (Docket No. 268) and a Motion for a New Trial (Docket No. 269). Thereafter, the Defendant filed a pro se Supplemental Motion for a New Trial (Docket No. 272). After new counsel was appointed, a Motion to Adopt and Supplement Previous Motion for New Trial (Docket No. 310), a Memorandum in Support (Docket No. 311), and a Motion to Adopt Judgment of Acquittal (Docket No. 312) were filed by counsel, Charles Gavin. The United States has responded, and the issues are ripe for resolution.

2

## DISCUSSION

### 1.   Motion for Judgment of Acquittal

#### A.   Legal Standard

Under Fed. R. Crim. P. 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." If the jury returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Entry of judgment of acquittal is appropriate where "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In the Fourth Circuit, the well-settled test is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the

prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982) (citing United States v. Dominguez, 604 F.2d 304, 310 (4th Cir. 1979), cert. denied, 444 U.S. 1014 (1980); United States v. Stroupe, 538 F.2d 1063, 1066 (4th Cir. 1976)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). Accordingly, if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

### B. Substantial Evidence Supported the Jury's Verdict as to all counts of conviction

As to Count One, the Defendant argues that the evidence did not support his conviction as (1) he did not become a principal of A&O until January 1, 2007, and (2) the conspiracy concluded on August 31, 2007. In the alternative, he argues that the Superseding Indictment improperly alleged two conspiracies. The United States presented extensive evidence, including testimony

from Brent Oncale, Michael Lapat, and others, from which the jury concluded that the Defendant engaged in a single conspiracy that began in November 2004 and concluded well after August 31, 2007.

As to Counts Two, Three, Five and Six, the United States had to prove the three elements of mail fraud: (1) that there was a scheme and artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations, or promises; (2) that the Defendant knowingly participated in the scheme and artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and (3) that, in execution or in furtherance of that scheme, the Defendant used or caused the use of the United States mails or a private or commercial carrier as specified in the Superseding Indictment. As to each of these four counts, a review of the evidence the United States presented at the trial, including testimony from Oncale, Tomme Bromseth, Russell Mackert, and others, and exhibits, shows that there was extensive evidence from which the jury could have concluded that the Defendant engaged in the scheme to defraud, that he was well aware that mailing investor documents was a critical part of A&O's nationwide business, and that he was guilty of each of the mail fraud counts.

As to Count Eight, the United States presented substantial evidence that the Defendant and his co-conspirators engaged in a

conspiracy to commit money laundering.   From this evidence, which included testimony from Oncale, Steve Khoury, and others, a rational jury could have concluded that the Defendant engaged in a conspiracy to commit money laundering.

Counts Nine and Eleven through Fourteen alleged that the Defendant committed money laundering.   The United States presented extensive evidence that the Defendant committed money laundering by presenting evidence through exhibits and testimony from Special Agent John Norton that the property involved in the financial transactions in these counts were the proceeds of illegal activity, namely, mail fraud.   From the evidence presented, a rational jury could have concluded that the Defendant engaged in money laundering.

Counts Fifteen, Seventeen, and Eighteen alleged that the Defendant engaged in securities fraud.   The elements of securities fraud track those of mail fraud, except that the fraud must occur in the context of the sale of securities.   The United States presented overwhelming evidence, including testimony from David Fielder, that the mailings were in furtherance of a scheme to defraud, the Defendant never disputed that the A&O Capital Appreciation bond was a security, and many witnesses testified to that fact.   The United States presented ample evidence from which a rational jury could have concluded that the Defendant engaged in securities fraud.

Viewing all of the evidence in a light most favorable to the United States, the Court finds that substantial evidence supports the jury's verdict. The motions for a judgment of acquittal, therefore, will be denied.

### 2. Motion for a New Trial

#### A. Legal Standard

Upon motion of the defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for a new trial is within the broad discretion of the district court. "The meaning of the phrase 'in the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." United States v. Ibisevic, 761 F. Supp. 2d 326, 336-37 (E.D. Va. 2010). The district court, therefore, "'should exercise its discretion to award a new trial sparingly,'" and "a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (quoting United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003), cert. denied, 540 U.S. 1185

(2004)), cert. denied, 549 U.S. 892 (2006).

### B. The Defendant is Not Entitled to a New Trial

The Defendant requests a new trial on all counts in the Superseding Indictment. First, he asserts that he was "escorted into the courtroom from the Marshal's lockup after approximately six jury members had already been seated in the jury box." Def's Mem. for New Trial at 2 (Docket No. 311). He concedes that he was "not shackled or in handcuffs, and was dressed in civilian clothes," but asserts that "each Marshal [had] an arm on the defendant as a manner of restraint." Id. He also asserts that, upon seeing that the jury was being brought into the courtroom, the Marshals "grabbed the Defendant and pulled him back into the lockup area, further compounding the prejudice." Id. Accepting as true the Defendant's version of the facts, all any juror would have seen was the Defendant dressed in a suit, emerging from a side door and approaching his counsel table, accompanied by two other men dressed in suits, and then being take back through the side door. The parties agree that no evidentiary hearing is required as to this claim.

It is well-established that jurors' inadvertent sightings of a defendant's restraint are not per se prejudicial. United States v. Shaver, 511 F.2d 933, 935 (4th Cir. 1975); United States v. Rutledge, 40 F.3d 879, 883-84 (7th Cir. 1994), rev'd on other grounds, 517 U.S. 292 (1996) ("categorically

reject[ing]" the argument "that prejudice automatically inheres in a trial when a juror inadvertently sees a defendant in handcuffs" and noting that this position "is in accord with other circuits that have addressed this issue"); United States v. Williams, 809 F.2d 75, 84 (1st Cir. 1986) (collecting cases from the Second, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuit Courts of Appeal for the same proposition). A new trial is warranted "only when the jury's view of the defendant in restraints is so inherently prejudicial that the right to a fair trial is denied." United States v. Momon, 1995 WL 231839, at 2 (4th Cir. 1995) (unpublished). "The defendant has the burden of showing that he was actually prejudiced when the jury had only a brief glimpse of him in restraints while being transported to and from the courtroom, as opposed to seeing him in restraints throughout the trial." Id. The fatal blow to the Defendant's claim that this warrants a new trial is the fact that he failed to raise this issue at the time it occurred. This failure prevented the Court from polling the jury with regard to whether the incident had rendered any jurors incapable of deciding the case on the evidence. Thus, the Defendant cannot show any actual prejudice from any juror's inadvertent glimpse of him being escorted in and out of the courtroom. Even if he had raised this at the time it occurred, the extremely limited amount of "restraint" that any juror could have observed – that

he was escorted by two men in suits from a side door in and out of the courtroom - would be very unlikely to have prejudiced the Defendant, given the Court's repeated instructions regarding the presumption of innocence and the jurors' duties to consider only the evidence. Thus, this claim does not require a new trial.

Second, the Defendant asserts that the United States committed prosecutorial misconduct by referring to an agreed stipulation in its opening statement. The parties agree that no evidentiary hearing is necessary on this claim. The agreed stipulation, in relevant part, states:

> On or about April 23, 2004, Defendant Adley H. Abdulwahab pleaded guilty in the 337th District Court of Harris County, Texas, to Forgery of a Commercial Instrument, a felony. The court deferred final adjudication of Defendant Abdulwahab's case, and placed him on a five-year period of community supervision. On June 4, 2007, the court terminated Defendant Abdulwahab's period of supervision early and dismissed the case.

(Docket No. 172). The United States claims and the Court agrees that the fact of the Defendant's felony plea was relevant to the crimes alleged in the Superseding Indictment and was admissible pursuant to Federal Rule of Evidence 402.[1] Among the manner and means of the mail fraud conspiracy alleged in Count One was the fact that the Defendant failed to disclose to certain investors

---

[1] Counsel and the Court discussed this issue extensively on the record, with the Court ultimately instructing the parties to determine how to address the issue of the Defendant's prior felony plea. Trial Transcript, June 7, 2011, at 85-95 (Docket No. 293).

that he had pled guilty to forgery of a commercial instrument in Texas in 2004.    Superseding Indictment, at ¶ 64 (Docket No. 140).    Counsel for the United States made one reference[2] in his opening statement to the fact that the Defendant had "pled guilty to felony forgery in the State of Texas."    Trial Transcript, June 7, 2011, at 5 (Docket No. 293).    The Defendant concedes that the statement was "factually accurate."    Def's Mem. for New Trial at 3 (Docket No. 311).

The test for prosecutorial misconduct is (1) whether the conduct was, in fact, improper, and (2) if so, whether the improper conduct so prejudiced the Defendant's substantial rights that the Defendant was denied a fair trial.    United States v. Lighty, 616 F.3d 321, 359 (4th Cir. 2010).   Abdulwahab asserts, and correctly so, that, after a period of successfully-served community supervision, the case against him was dismissed.    That, however, does not negate the fact that he did plead guilty to a felony, as the stipulation correctly set forth.    Moreover, the stipulation actually explained the successful supervision and the subsequent dismissal of the charge to which Abdulwahab pled guilty.    On this record, the

---

[2] In the first Motion for New Trial, the Defendant claimed that the United States had stated "that the Defendant was a convicted felon."  (Docket No. 269, ¶ 1).    However, a review of the transcript demonstrates that this did not occur, and it appears that the Defendant's present counsel has retracted this claim.

reference to Abdulwahab's guilty plea was not prosecutorial misconduct.

The United States simply referenced a fact to which the Defendant had stipulated, and the testimony and exhibits demonstrate that the manner in which the fact was referenced was carefully done and targeted toward the charged offenses. The proper issue before the jury was whether the Defendant's omissions with regard to his plea of guilty were material to the investors' decisions to invest in A&O.

The "canned questions," as the Defendant refers to them, that the United States asked several witnesses were clearly designed to tread cautiously around the fact of the guilty plea. The Court's instructions provided additional protection against any improper use of the stipulated facts. The Fourth Circuit generally follows the presumption that juries obey the limiting instructions of the district court. United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions."); United States v. Ince, 21 F.3d 576, 584 (4th Cir. 1994) ("[W]e recognize the presumption of cure by a court's instruction."). The conduct of the United States was not improper, and there was no prejudice to the Defendant. This claim does not warrant a new trial.

Third, the Defendant argues that one juror slept throughout

the trial. Def's Mem. for New Trial at 9-10 (Docket No. 311).
After the jury began to deliberate, the Defendant's trial
counsel told the Court that he was concerned that a particular
juror had been sleeping while the Court was giving its final
instructions.   Trial Transcript, June 10, 2011, at 140-41
(Docket No. 286).   The Court then engaged in an extensive
factual inquiry regarding this issue.   The Court recalled that
it had specifically observed the juror throughout the trial and
that, though the juror closed his eyes and put his head down,
the Court noted that the juror's hands continued to move and
that he was not sleeping.   Id. at 141.   At the Defendant's
request, the juror was brought from the jury deliberation room
into the courtroom.   Id. at 143-44, 146.   All but one of the
representatives of the United States left the courtroom and, in
the presence of the Defendant, defense counsel, and one
representative of the United States, the Court questioned the
juror about whether he had been sleeping.   Id. at 145-46.   The
juror emphatically stated that he had not been sleeping but that
he closed his eyes because he had an eye condition and was
sensitive to light.   Id. at 146.   Following the Court's inquiry,
there were no additional objections, and the juror returned to
deliberations.   Id. at 146-47.   The record is clear that the
juror in question was not sleeping during the instructions or
during the trial as a whole.   The juror specifically told the

Court, "I keep my eyes closed all the time because the light bothers my eyes," and that it "[h]as to do with my vision." Id. at 146. Although the specific concern raised by the Defendant at the time was whether the juror was sleeping during the instructions, the Court's own observations and the juror's explanation addressed the trial as a whole. The matter was fully addressed by the Court on the record, and no evidentiary hearing is necessary. This claim does not warrant a new trial.

The next claim is the Defendant's pro se claim that his retained trial counsel was ineffective. The Defendant lists seven reasons. An ineffective assistance claim may be raised as a motion for new trial under Rule 33. United States v. Russell, 221 F.3d 615, 619 (4th Cir. 2000). However, the Defendant raised the allegations in a pro se pleading (Docket No. 272). The Defendant is attempting to engage in hybrid representation for this motion "whereby a defendant proceeds pro se in some respects and acts through counsel in others." United States v. Ayesh, 765 F. Supp. 2d 763, 768 (E.D. Va. 2011). There is no constitutional right to hybrid representation. See United States v. Singleton, 107 F.3d 1091, 1103 (4th Cir. 1997) ("we reject [defendant]'s contention that the Constitution requires that he be provided with a hybrid type of representation"). The decision to grant or deny hybrid representation lies solely within the discretion of the trial court. Id. at 1100 n.7

(citing cases from eight circuits for this proposition). Requests for hybrid representation should be granted "only where a defendant has made a showing of some special reason for the defendant to act as co-counsel." United States v. Simmons, 2008 WL 3850778, at *1 (N.D. W.Va. Aug. 14, 2008) (unpublished) (internal citations and quotations omitted).

In this case, the Defendant has not demonstrated a special need and has not expressed any interest in proceeding pro se. He is represented by very competent counsel who has advanced a number of claims. The Court declines to consider the pro se allegations of ineffective assistance of counsel. Should he choose to do so at the appropriate time, the Defendant will be able to raise the claims in a collateral proceeding under Title 28, United States Code, Section 2255.[3]

The next claim is another claim of prosecutorial misconduct, related to a Brady violation. The Defendant claims that the United States failed to seek out and collect "no less than 15 computers and hard drives [that] were removed from A&O office facilities after August 31, 2007, and retained by [Brent]

---

[3] One of the allegations – that trial counsel failed to exercise a strike for cause as to a particular potential juror and, as a result, was forced to exercise a peremptory strike is not true. At the status conference on August 26, 2011, the potential juror was identified as juror 54 with the initials M.O. A review of records kept by the jury clerk indicates that juror 45 with the middle and last initials of M.O. was stricken when the United States, and not the Defendant, exercised its first peremptory strike.

Oncale." Def's Mem. for New Trial at 11 (Docket No. 311). In Brady v. Maryland, the United States Supreme Court held that the prosecution deprives a criminal defendant of due process when it suppresses evidence that is "favorable to an accused . . . where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To prove that a violation has occurred, a defendant must demonstrate that "the undisclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them." United States v. Noel, 2009 WL 2767650, at *3 (E.D. Va. 2009)(internal quotations and citation omitted).

The United States addresses primarily the third prong because, as it asserts, "the defendant's Brady violation so clearly fails as to the third element, the Court need not address the other two elements." The United States is correct. First, the Defendant presents only speculative statements that the evidence was favorable and material. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976). As to the third prong, the United States is only obligated to turn over materials that are "in its possession, custody, or control."

16

<u>United States v. Hall</u>, 434 F.3d 42, 55 (1st Cir. 2006).   These alleged computers were not and are not in the possession of the United States.   The Defendant contends that because Brent Oncale was a cooperating witness, the United States should have requested the computers from him.   <u>Brady</u> does not place an affirmative obligation on the United States to ferret out any potentially exculpatory evidence.   <u>Spicer v. Roxbury Corr. Inst.</u>, 194 F.3d 547, 567 (4th Cir. 1999) (quoting <u>United States v. Walker</u>, 559 F.2d 365, 373 (5th Cir. 1977)).   "Brady does not require the government to conduct discovery on behalf of the defendant." <u>United States v. Baker</u>, 1 F.3d 596, 598 (7th Cir. 1993).   Cooperating witnesses remain independent.   "While cooperating with the Government pursuant to the terms of his plea agreement [the cooperating witness] remained an independent actor." <u>United States v. Graham</u>, 484 F.3d 413, 417 (6th Cir. 2007).   The United States has no duty under <u>Brady</u> to investigate evidence that is under the control of a cooperating witness.   <u>Id.</u> at 418.   Moreover, the Defendant could have issued a trial subpoena for Oncale to produce the alleged computers and hard drives.   See <u>United States v. Celestin</u>, 612 F.3d 14, 22-23 (1st Cir. 2010) (declining to find a <u>Brady</u> violation in part because the defendant "was well aware of [the records] and could have subpoenaed them himself."); <u>United States v. Todd</u>, 424 F.3d 525,

534 (7th Cir. 2005) (same). This claim does not warrant a new trial.

The record here provides no basis for granting a new trial for any reason. The motions for a new trial, therefore, will be denied.

## CONCLUSION

For the foregoing reasons, the Defendant's MOTION FOR A JUDGMENT OF ACQUITTAL (Docket Nos. 268 & 312) and MOTION FOR A NEW TRIAL (Docket Nos. 269, 272 & 310) will be denied.

It is so ORDERED.

_____ /s/   *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  September 22, 2011